JOHN WATTS adm'r of JOHN L. LEGGETT *vs.* JAMES LEGGETT, *et al*

1. When the death of a man seized in fee of land, leaving a widow and minor children, without having had a homestead laid off, the double rights of dower and homestead, do not attach together *simul et simel*, either in the widow or widow and children, but dower having been assigned to the widow, the children are only entitled to a homestead *sub modo*, i. e., a present interest of the enjoyment of which is postponed until after the death of the dowress.

2. The manifest purpose of the Act of 1868-'69, chap. 137, is to prevent the the widow and minor children from being prejudiced, by the omission of one entitled to a homestead, to cause it to be laid off in his lifetime. It cannot be supposed that the effect of the statute, is, to go beyond the Constitution, when its professed object is to carry into effect its provisions.

RODMAN, J., *dissentiate.*

This was a special proceeding instituted by the plaintiff as administrator of one John Leggett, against his widow and minor children to obtain a license to sell the real estate of which the intestate had died seized, subject to the dower of the widow which had been assigned. The intestate had not procured a homestead to be laid off in his life, and now the widow and children claim a homestead over and above the dower assigned to the widow, and the cause coming on for hearing before His Honor, Judge Moore, at Chambers, on the 5th day of September, 1871.

His Honor decided in favor of their claim, and the plaintiff appealed.

*H. A. Gilliam,* and *Battle & Sons* for the plaintiff.
*No Counsel* for the defendant.

PEARSON, C. J. Constitution art. X, sec. 1, "The personal property of resident of this State, to the value of $500," is exempted from sale under execution for any debt.

Sec. 2. " *Every homestead*, and the *dwellin⌐ and buildings used therewith*, not exceeding in value $1,00 ;" is exempted from sale, under execution for any debt.

Sec. 3. " The homestead, after the death of the owner thereof, shall be exempt from the payment of any debt, during the minority of his children or any one of them."

Sec. 5. "If the owner of a homestead die, leaving a widow, but no children, the same shall be exempt, from the debts of her husband, and the rents and profits thereof shall enure to her benefit during her widowhood, unless she shall be the owner of a homestead in her own right."

Sec. 6, secures to the separate use of the wife, all the real and personal estate, whether acquired before or after the marriage.

Act 1868-'69, ch. 137, entitled "an Act to lay off the homestead and personal property exemption."

Sec. 7. "Whenever any resident of this State may desire to take the benefit of the homestead and personal property exemption, *as guaranteed by article ten of the Constitution of this State*," such resident shall apply to any Justice of the Peace," &c.

If the homestead had been laid off in the life-time of the husband, according to the Constitution, it would have been so laid off as to include the homestead (that is *the place at which he had his home*) and the dwelling and buildings used therewith." Act 1369-'70, ch. 176, entitled "procedure to obtain dower," sec. 2. "Every married woman shall be entitled to one third in value of all the lands, &c., whereof her husband was seized at any time during coverture, " in which third part shall be included the *dwelling house in which her husband usually resided*, together with the offi ces, outhouses and buildings and other improvements thereto belonging or appertaining," in other words, as expressed in the Constitution, "The homestead and the dwelling and buildings used therewith."

John Watts *v.* James Leggett.

If the homestead had been laid off, in the life-time of the husband, at his death the dower of the wife would have been assigned so as to include the dwelling-house, in which the husband had usually resided, and buildings used therewith. Thus the dower would be assigned so as to include the homestead, or a part thereof, and the right of dower having attached at the time of the marriage, would have been parmount, and the right of the children to enjoy the homestead during the minority of any one of them, must have been taken, subject to this paramount right of dower; the effect being to postpone the enjoyment of the children, as to so much of the homestead as is covered by the dower, until the death of the widow; leaving them of course, to the present enjoyment of such part of the homestead and land, appertaining thereto, as is not covered by the dower.

The question is, does that make a difference, or are the rights of the widow and children to be treated in the same way, as if the husband and father had not neglected to have his homestead laid off in his life-time?

This depends upon the proper construction of sec. 10, of the Acts of 1868–'69, ch. 137 : "If any person entitled to a homestead and personal property exemption, die, without having the same set apart, his widow, if he leave one, then his child and children under the age of twenty-one years, if he leave such, may proceed to have said homesteau and personal property exemption, laid off to her, him or them, according to the provisions of sections seven and eight of this Act."

A perusal of the statute, makes it manifest that the purpose of this section is, to prevent the widow and children from being prejudiced, by the omission of one entitled to a homestead and personal property exemption, to have it laid off in his life time, so as to secure to them the benefit of the homestead and personal property exemption, as guaranteed by Art. X, of the Constitution. Indeed, this section, in so many words, provides that the property shall be laid off to him, her or them, according to the provisions of sections seven and eight.

We have seen how it would have been if the homestead had been laid off according to the provisions of section 7. It is hard to understand, how a provision to prevent the widow and children from being prejudiced by an omission to have the assignment in the life-time of the party entitled, can be strained so as to have the effect of giving them greater advantage, than if the omission had not occurred on the part of one, under whom the widow and derive their title. The constitution makes 'the relief of the debtor," its primary purpose, and the to benefit the widow, and minor children, comes in merely as an incident. It cannot be supposed that the effect of the statute, is, to go beyond the Constitution, for its professed purpose is, to carry into effect the provisions of the Constitution, and to secure the homestead and personal property exemption, as guaranteed by Art. X, of the Constitution."

Judgment reversed. This opinion will be certified to the end, that a homestead may be laid off, as if it had been done in life-time of the deceased, so as to include the homestead, dwellings and buildings where he usually resided, to be enjoyed subject to the dower.

RODMAN, J., *dissenting.* I regret to differ from my associates, and my respect for them, and the great importance of the decision to the orphaned poor of the State, require me to give as briefly as I can, the reasons for my difference.

The third section of Art. X, of the Constitution certainly intends that the children shall have a homestead after their father's death, whether it was laid off before or not; and it contemplates that their right shall be paramount, to that of the widow, to a homestead though not to her dower ; for, by the Constitution the legislature is not *required* to give her a homestead in a case where there are no children, (Sec. 5). The Act of 1868–'69, does, however, give her one whether there are children or not. And I think it may lawfully do so, provided it does not impair the right of the children to a homestead ; and I think it is a false construction of that act, which,

makes it rob the orphans, instead of the widow, for the benefit of the creditors of the deceased. If this be the true construction and necessary effect of the act, I should say it was void, as a palpable violation of sec. 5, of Art. X, of the Constitution. I do not think, that a reasonable construction of the act, will give it any such effect. But before I proceed to expose what I consider to be the radical fallacy on which that construction rests, I wish to follow out, that construction, in some of its practical workings, and it will be seen, that, in the great majority of cases where there is a widow and children, it defeats, so far as the children are concerned, the beneficent intent of the Homestead Article of the Constitution, which many have thought the best Article in it.

I will suppose that the widow, is, in all cases, entitled to her dower ; although if the principle of *Sutton vs. Askew*, decided at this term, is adhered to, it may be extremely doubtful whether, when a husband has his homestead laid off during his life, he can be said to die seized of any estate, of which, his widow (if the marriage took place before 1866) is entitled to dower. But, I pass over this, and, suppose the widow entitled to dower and also to a homestead. I believe it is agreed that she is not entitled to both, but only, to either, at her election.

If the real estate of the deceased is worth $3,000—it is indifferent to her whether she takes dower or homestead, and, the consequences, to the children, will be the same. If the estate be worth less that $3,000, she will elect to take the homestead, and, in every such case, the children get nothing, in the homestead during the life of the wife.

Now, the assumption of the majority of the Court, and, the sole argument on which it can pretend to stand, as I conceive, is this—that because the homestead, if it had been laid off in the life time of the husband and father, must have included the dwelling ; *therefore,* whenever it is laid off after his death, and for whomsoever it is laid off, it must include the dwelling ; and *therefore,* must be laid off for the widow and for the chil-

dren on exactly the same adjacent land; and *therefore*, the widow claiming a homestead in lieu of dower, which, it is admitted is a paramount right, must take paramount to the children, who thus get nothing during her life. So, by this construction of an act, intended to carry out the Constitution, and certainly, not to violate or override it, the widow, who is not contemplated by the Constitution as an object of favor, except when there are no children, is made, to supplant the children and turn them out of doors.

It may be said, however, that in the case now before us, the widow does not claim her homestead but her dower, so that the cases and consequences, I have supposed, are not to the point. Let us see then, the consequences to which this consruction of the Act leads, when the widow sets up her claim to dower, and the children theirs' to a homestead. The false theory is still applied, and with a more absurd, if less injurious, result. If, the estate of the deceased be worth $3,000 or over, the dower of the widow equals, or exceeds the homestead of the children, so that upon the idea that the last must necessarily be lapped upon the first, the children get nothing during the life of the widow. If the estate be less than $3,000, as the widow by her dower gets a life-estate in land worth less than $1,000, the children get a homestead in the difference between her dower and the $1,000, which difference, is the value of their homestead. If the estate be worth $1,000, the widow's dower being $333⅓, the children would take a homestead to the value of $666. If the estate be worth $300, the children will take a homestead in an estate worth $200. So, this is the result of the legal construction of the Act of 1868–'69, that the larger the estate of the deceased is, the less, do his children get; and if they are unfortunate enough to have a father whose land is worth $3,000, they get nothing until after the widow's death, whereas, if he was worth only one-tenth of that sum, they get a homestead in $200 during her life-time, and in another $100 at her death, during their non-age. Such absurd results fur-

nish the strongest argument against the construction of the statute decided on by the maojrity of the court. Surely no sane legislature ever intended this. It would hardly be respectful to impute such an actual intention. I proceed now, to examine the reasons for this construction of the Act of 1868–'9. They are these, and no others are or can be possibly assigned of the slightest weight or value. The Constitution (Art. X, sec. 2,) says that *the homestead shall include* "*the dwelling and buildings used therewith,* not exceeding in value $1,000, to be selected by the owner thereof, &c." The Act of 1868–'9, ch. 137, sec. 1, says that when the estate of any resident of the State shall be levied on, such portion thereof as he actually occupies as a homestead, or "as he may elect to regard as such, *including the dwelling and buildings thereon,* shall be exempt from such levy, &c."

Section 7 says, that when a resident desires to have a homestead laid of, he shall apply to a Justice, who shall appoint three persons to lay it off, "*according to the applicant's directions,* not to exceed $1,000 in value, &c." Section 10, provides that if any person entitled to a homestead dies, without having had it laid off, his widow, ("or if no widow," I suppose was evidently omitted) then his child, may have a homestead laid off *according to section 7.*

The dower Acts of 1866–'67, 1868–'69, and of 1869–70, all allow or require the widow's dower, to be so laid off, as to include the dwelling-house.

Upon these statutes, which are construed as absolutely requiring both the widow's dower, and the children's homestead to include the dwelling-house, &c., the conclusion is drawn not only that the two rights must lap as to the dwelling-house, but that they must lap in all other places, and whichever is greater, must include that which is less, and the children's homestead must be thus, in every case destroyed, *pro tanto* by the widow's dower.

Without looking for aid to the absurd and inequitable con-

sequences to which, as we have seen, this construction of the act leads, I deny, that there is any ground for the conclusion, that the two rights must necessarily lap to the detriment of the weaker, and that the homestead, must necessarily and under all circumstances include, the dwelling house.

In the first place, although the Constitution says, that when a homestead is *laid off for the owner*, it shall include the dwelling, neither the Constitution, nor the Act of 1868–'69, say so, when it is *to be laid off for the widow or children.* On the contrary, sec. 10, of the Act says, that when a widow or child desires a homestead laid off, it shall be laid off, *according to sec.* 7, and that section expressly says, it shall be laid off *" according to the applicant's directions."*

But is said, that section 7, says, " That whenever any resident of this State may desire to take the benefit of the homestead and personal property exemption *as guaranteed by Art. X of the Constitution of this State.* such resident, (or his agent or attorney) shall apply to any justice of the ;Peace." &c. ; and that this reference of section 10, to sec. 7, and of section 7 to the Constitution imports into section 10, the command, that the homestead of the children, shall, in all cases be laid off to include the dwelling-house and adjacent lands, and *not elsewhere.* It is, upon this long-stretched and recondite connection of one section with another, and, of that, with the Constitution, and, upon an illogical inference thereupon drawn, that the opinion of the Court, so disastrous to the children, entirely stands. Now, the various Acts in relation to dower have always required that it be so laid off as to include the dwelling-house. Yet was it ever contended that because there was no dwelling-house upon that land liable to dower, the dowress could not have her dower on lands where there was no dwelling? Surely not. If the husband's dwelling was upon land liable to her dower, it was included in the admeasurement; if it was on land in which he had no estate liable to dower, for example, a life estate or a term of years, the widow took

her full dower upon other lands, on which there was no dwelling. Why is not this just and beneficent rule of the common law, which is applied for the benefit of the widow, applied in a parallel case, for the benefit of the orphan? When there is the same reason, there ought to be the same law. If there be no widow's dower or homestead to interfere, the homestead of the children ought to be laid off to include the dwelling. But if the widow's dower has taken the dwelling, then it is the same as if there was land liable to the children's homestead, on which there a dwelling, and it must of necessity, and, "*ut res magis valeat quam pereat*," be laid off on land where there is no dwelling, and thus, need not conflict or lap on the widow's dower. The whole theory of the necessary and inevitable lappage of the dower, and of the children's homestead, is, as it seems to me, destitute of foundation, in any principle of law. On the contrary, it is opposed to these received and honored rules of construction, by which full effect is given to the intention of a statute, when it appears, by reasonable intendment, and does not contravene any maxim of law.

My learned colleagues have not said, and ot course would not say, that it is not material for the children to have their homestead, if the mother has her dower, for, she will give them a home. The answer to this suggestion, if any should make it, is this, the law did not intend to give to the children of a deceased father the support of his widow's kindness. If that did not exist without the law, the law could not give it. Besides, the widow may marry again, and, the children be thus made homeless. Or she may be a second wife, and not their mother, and thus without the maternal feeling.

I cannot concur in that construction of an act, which was intended as beneficent and has been applauded as such, which takes out of it all beneficence to the children; which makes it give to them a shadow, instead of, a substance; an estate to begin at the death of another, and to expire when they come

of age, which is called, as if in mockery, a homestead sacred "from turret to foundation-stone;" a contingent homestead in a reversion, a house, beneath whose roof they may never sleep, and land, upon which they cannot tread without a trespass. That is neither the popular or the Constitutional idea of a homestead.

PER CURIAM.                                    Judgment reversed.