## In re SEABOLT et al.

(District Court, W. D. North Carolina. February 10, 1902.)

1. EXEMPTIONS—PARTNERSHIP—EXEMPTION FROM PARTNERSHIP PROPERTY.

   One of two or more partners may have a portion of the partnership effects set apart to him as his personal exemption with the consent of the other partner or partners.

2. SAME—SURVIVING PARTNER.

   A surviving partner can have his personal exemption set apart to him from the partnership effects, if he have the consent of the administrator of the deceased partner.

**3.** SAME—BANKRUPTCY.

Const. N. C. art. 10, § 1, declares that the personal property of any resident, to the value of $500, shall be exempt from sale under execution or any other final processes of any court issued for the collection of any debt. *Held*, that a debtor's right to the exemption out of his property accrues to him when his creditors institute proceedings in bankruptcy against him; and, on the appointment of the trustee, the title of the property reserved by law as the exemption does not vest in the trustee, but remains in the debtor awaiting the formality of an appraisal and setting apart.

**4.** SAME—DEATH OF DEBTOR.

On the death of a debtor, property which would have been set apart to him under his exemption, had he lived, remains a part of his estate, and goes to his administrator.

**5.** SAME—WIDOW'S ALLOWANCE.

On the death of one against whom proceedings in bankruptcy have been instituted, the federal court has no power to administer the widow's right of allowance for a year, given under the laws of the state, which provide that a widow has the right to a year's support from the stock, crops, and provisions on hand; the matter being one exclusively within the state jurisdiction.

**6.** HOMESTEAD—UNBORN CHILD—ALLOTMENT.

Const. N. C. art. 10, § 3, declares that a homestead, after the death of the owner, shall be exempt from the payment of any debt during the minority of the children; and by Code N. C. § 514, if the owner of a homestead die without the same being set apart, the widow, or his child or children under the age of 21, may have the same laid off. Section 1328 enacts that a child unborn, but in esse, shall be deemed a person capable of taking any estate. *Held*, that a child in ventre sa mere at the time of its father's death is entitled to have a homestead allotted from the homestead of her father.

**7.** SAME—DOWER.

Where a widow is entitled to dower, and a child to a homestead right in the same lands, the dower will be assigned so as to include the homestead, and the right of children to enjoy the homestead during their minority must be taken subject to the paramount right of dower.

In Bankruptcy.

Swink & Swink, for creditors.

Glenn, Manly & Hendren, for bankrupts.

BOYD, District Judge. This matter is before the court upon exceptions to the report of Alexander, referee. The facts necessary to an understanding of the points involved are as follows: On the 1st of July, 1901, L. W. Seabolt Company, a partnership composed of L. W. Seabolt and W. M. Mosley, filed a general deed of assignment of partnership property for the payment of debts, reserving, each for himself, the homestead and personal property exemption allowed by the constitution and laws of North Carolina. A petition in involuntary bankruptcy was filed by the creditors against L. W. Seabolt and W. M. Mosley, trading as L. W. Seabolt Company, and L. W. Seabolt and W. M. Mosley individually, on the 25th of July, 1901, and on that day a receiver was appointed of both estates. In the meantime, to wit, on the 15th day of July, 1901, the entire assets of the firm, with the consent and approval of a large majority in amount of the creditors, was converted into cash by a sale, but the said bankrupts had no voice in the proceeding to sell, and did not participate in the same in any way. On the 25th of November, 1901, the said firm and individual partners were adjudged bankrupts, and shortly

thereafter a trustee was appointed for both estates, who qualified and entered upon the performance of his duties. Subsequent to the filing of the petition in bankruptcy, and prior to the adjudication, the partners agreed in writing that each should reserve his personal property exemptions, such as are allowed by the constitution and laws of North Carolina, out of the partnership assets. After the filing of the petition and the agreement as to exemptions referred to, and before the adjudication, L. W. Seabolt died, leaving a widow, and since his death, to wit, on the 27th of October, 1901, his widow gave birth to a child, which is now living. W. M. Mosley has no estate except his interest in the partnership property, and L. W. Seabolt had no estate except his interest in the partnership property and certain real estate mentioned in his individual schedule, amounting to $2,326.25, subject to a mortgage of $700, and personal property to the value of $21.50. At the time of the filing of the petition in bankruptcy the firm and the individual members were insolvent. A demand has been made on the trustee by W. M. Mosley for his personal exemption out of the firm assets, and a demand has also been made by the administrator of Seabolt for an allotment of the personal exemption which he would have been entitled to were he living, to the end that this exemption may be administered as a part of Seabolt's estate, with a view of setting apart the year's allowance to his widow and posthumous child. Demand has also been made in behalf of said child for his homestead out of the individual real estate of the said Seabolt. The administrator of Seabolt was, on the 27th of November, 1901, made a party to the bankruptcy proceedings, and since Seabolt's death Mosley has given his consent again, in writing, that Seabolt's personal exemption may be allotted from the firm assets, and the administrator of Seabolt has given his consent that Mosley may take his exemption also out of the partnership funds. The trustee comes into court and asks to be advised as to the course he should pursue in the premises. The referee reports in favor of the allotment of the personal exemptions to Mosley and to the estate of Seabolt as demanded; also that the widow of Seabolt is entitled to her dower in his individual real property; and that the infant child, born after his death, is entitled to homestead, under the provisions of the North Carolina constitution; and to these conclusions of the referee the creditors have excepted.

The personal exemption in North Carolina is by virtue of section 1 of article 10 of the constitution of the state, which reads as follows:

"The personal property of any resident of the state, to the value of five hundred dollars, to be selected by such resident, shall be and is hereby exempted from sale under execution or other final process of any court issued for the collection of any debt."

There can be no question about the right of Mosley to have allotted to him from the partnership effects his personal property exemption to the amount of $500, for it is held in this state that one of two or more partners can have a portion of the partnership effects set apart to him as his personal exemption, with the consent of the other partner or partners (Burns v. Harris, 67 N. C. 140); and in the same case it is held that the partnership creditors cannot object to this exemption, for they no more have a lien on partnership effects for their debts

than creditors of an individual have on his effects. The facts in this case show that after the proceeding in bankruptcy was begun, and before Seabolt's death, he and Mosley filed their consent in writing, each that the other might have his personal exemption allotted from the partnership property; and, if this were not true, the facts show that since the death of Seabolt his administrator has filed his consent that Mosley, the surviving partner, should have allotted to him his personal exemption from the partnership assets. A surviving partner can have his personal exemption from partnership effects with the consent of the administrator of the deceased partner. Richardson v. Redd, 118 N. C. 677, 24 S. E. 420.

The question then remaining in this regard is whether Seabolt having died after the proceedings in bankruptcy were commenced, and after the consent of the partners was had for exemptions from the partnership effects, the allotment which he would have taken had he lived vests in his administrator. It is my opinion that it does. A creditor pursuing a debtor by execution or other legal proceeding, for the purpose of subjecting his property to the payment of his debt, does not acquire a lien upon that part of the debtor's personalty which is exempted by the law. The exemption in North Carolina is in favor of a debtor against execution for debt.

The purpose of the law undoubtedly is to save the exempted property from sale at the hands of creditors, for the benefit of the debtor and his family. This is no doubt the humane object which the framers of our constitution and the makers of our exemption laws had in view. A statute of exemption is properly a remedial statute, evidently intended to prevent families from being stripped of their last means of support, and left to suffer, or cast as a burden upon the public, and to rescue them from the hands of unfeeling creditors. Leavitt v. Metcalf, 19 Am. Dec. 718. It would be a strange construction of the law, therefore, to hold that, whilst the exemption would obtain against what is known as an execution, or other final process issued for the collection of a debt, it could still be swept away by another proceeding on the part of creditors, and the debtor and his family thus be deprived of its benefits. The right to the exemption accrued to the debtor when the creditors instituted proceedings in bankruptcy to subject his property to the payment of his debts, and upon the appointment of a trustee in bankruptcy the title of the property reserved by the law as the debtor's exemption did not vest in such trustee, but remained in the debtor, awaiting the mere legal formality of having it appraised and set apart to him. This being the case, the exempted property which would have been set apart and allotted to Seabolt had he lived remained a part of his estate at his death, and belongs to his administrator, and not to the trustee in bankruptcy; and the only duty with respect thereto which rests upon the trustee is, upon application of the administrator, to proceed as in other cases to have it appraised and set apart. The exceptions of the creditors are therefore overruled, and the report and findings of the referee, in respect to the personal exemptions of both Mosley and the estate of Seabolt, are confirmed.

No difficulty can arise as to the manner of making the appraise-

ment and allotting the personal exemptions in this case; the property of the firm having been sold, and the proceeds thereof in cash, more than sufficient to cover the amount of both exemptions, being now in the hands of the trustee. Under the laws of North Carolina, a debtor is allowed a personal exemption to the amount of $500, and he can take this in articles of personal property, or have it allotted in money, provided the money is on hand. The cash being on hand in this instance, there is nothing left for the trustee to do except to pay it over to the parties entitled; that is, $500 to W. M. Mosley, and $500 to the administrator of Seabolt.

So far as the right of allowance for year's support to the widow is concerned, this court has no power to administer it, it being exclusively within the state jurisdiction. Under the laws of North Carolina, upon the death of a husband a surviving widow has the right to have set apart to her from the crop, stock, and provisions on hand a year's support, not to exceed $300 in amount, and an additional amount of $100 for each member of her family under 14 years of age. In the absence of crop, stock, and provisions, the administrator is authorized to pay such allowance for year's support from the personal assets of the estate which may come to his hands. Therefore, when the administrator of Seabolt has in hand the money paid to him by the trustee for the personal exemption, so much of it as is necessary can be set apart as a year's support to the widow by a proceeding in the state court under the statute providing for such cases.

We come now to consider the right of homestead in the real property of which Seabolt died seised. He left surviving him his widow and a female child in ventre sa mere, which since and shortly after his death has been born, and is now living. The following are the provisions of the constitution of North Carolina relative to homestead (section 2, art. 10):

"Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, or in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwellings and buildings used thereon, owned and occupied by any resident of this state and not exceeding the value of one thousand dollars, shall be exempt from sale under execution or other final process obtained on any debt."

Section 3, art. 10:

"The homestead, after the death of the owner thereof, shall be exempt from the payment of any debt during the minority of his children or any one of them."

And there is a further provision that if the owner of a homestead die, leaving a widow and no children, the rents and profits of such homestead shall inure to the benefit of the widow during her widowhood, unless she be the owner of a homestead in her own right. The only point involved here is as to whether Lena W. Seabolt, the posthumous child of L. W. Seabolt, deceased, is entitled to have a homestead allotted from the lands of her father, and to hold the same exempt from the payment of his debts during her minority.

Section 514 of the Code of North Carolina is as follows:

"If any person entitled to a homestead exemption die without having had the same set apart, his widow, if he leave no child, or his child or

children under the age of twenty-one years, if he leave such, may proceed to have said homestead exemption laid off according to sections 511 and 512."

And it is held in Lambert v. Kinnery, 74 N. C. 348, that:

"The title to the homestead is vested in the owner by the constitution of the state, and the allotment by the sheriff is not necessary to vest the title thereto. The only object of the allotment is to ascertain if there be an excess over the one thousand dollars, which is subject to execution."

The law is well settled, therefore, that, although the owner of a homestead or a person entitled thereto die without having the same allotted in his lifetime, the same can be allotted at the instance of his minor child or children, if he leave such, or, in the absence of minor children, at the instance of his widow. The contention of the creditors in this case is that the infant Lena W. Seabolt is not entitled to the homestead of her father by reason of the fact that she was not born at the time of his death, and that, therefore, the right could not accrue to her. The court cannot sustain this view. "A child in ventre sa mere is a child while yet unborn. From the time of conception the infant is in esse for the purpose of taking any estate which is for his interest, whether by descent, devise, or under the statute of distributions." 10 Am. & Eng. Enc. Law (1st Ed.) p. 624. The early English doctrine that an unborn child is not to be regarded as in esse has been long ago exploded, and the decisions of the courts now are uniformly to the effect that children in ventre sa mere are included within the meaning of the word "children." This principle is so well established and so fully understood by the profession that it is not deemed necessary to cite authorities to support it. As bearing upon this point, however, we may call attention to section 1328 of the North Carolina Code, which reads as follows: "An infant unborn but in esse shall be deemed a person capable of taking by deed or other writing any estate whatever in the same manner as if he were born;" and also cite Heath v. Heath, 114 N. C. 547, 19 S. E. 155.

In the argument before the court, the counsel for the creditors did not appear to seriously insist that the widow was not entitled to dower in the lands of her deceased husband. By the statute law of North Carolina widows are endowed as at common law, and every married woman, upon the death of her husband intestate, or who dissents from his will, is entitled to an estate for her life in one-third in value of all the lands whereof her husband was seised and possessed at any time during the coverture, in which one-third part shall be included the dwelling house in which her husband usually resided, together with other buildings thereunto belonging or appertaining; and, further, that the dower of a widow shall not be subject to the payment of debts due from the estate of her husband during the term of her life. It is true that in a case like this the dower and homestead will include, partly if not wholly, the same premises; but Chief Justice Pearson, in Watts v. Leggett, 66 N. C. 197, has clearly defined the relative rights of a widow having a dower and an infant child entitled to the benefit of homestead at the same time, in the same lands. He says:

"Thus the dower will be assigned so as to include the homestead or a part thereof, and the right of dower having attached at the time of marriage

would have been paramount, and the right of the children to enjoy the homestead during the minority of any one of them must have been taken subject to this paramount right of dower, the effect being to postpone the enjoyment of the children as to so much of the homestead as is covered by the dower until the death of the widow, leaving them, of course, to the present enjoyment of such part of the homestead and the land appertaining thereto as is not covered by the dower."

It is therefore ordered by the court that the exceptions be overruled, not only as to the right of Mosley and the estate of Seabolt to have their personal exemptions, but also as to the rights of the widow to dower, and the infant child to a homestead, and the report of the referee in these respects is hereby confirmed, and judgment rendered accordingly.

The clerk will tax the costs of this proceeding against the excepting creditors.